UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| PAXTON AYERS, | ) |
| Plaintiff, | ) ) ) |
| vs. | )  Case No. 1:05CV179 HEA |
| RENT-A-CENTER EAST, INC., d/b/a RENT-A-CENTER | ) ) ) ) |
| Defendant. | ) ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on defendant's Motion to Dismiss,[1] [Doc.. # 4]. Plaintiff opposes. For the reasons set forth below, the alternative motion to stay and compel arbitration is granted.

Plaintiff worked for defendant from September 24, 2003 until May 16, 2004. He filed this action in the Circuit Court of Cape Girardeau County, Missouri on August 26, 2005 alleging unlawful disability and race discrimination in violation of the Missouri Human Rights Act. R.S.Mo. § 213.100 *et seq*. Defendant removed the action based on the Court's diversity of citizenship jurisdiction. Defendant now moves for dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil

---

[1] Defendant's motion is styled "Motion to Dismiss, however, its Suggestions in Support of the Motion alternatively seeks a stay of this matter and to compel arbitration. See Document Number 5.

Procedure or alternatively, for a stay and for an order compelling arbitration.

## Facts and Background

Plaintiff began his employment with defendant on September 24, 2003. On September 27, 2003, an Arbitration Agreement was executed. Plaintiff does not recall signing the Agreement, but admits that it appears to be his signature on the copy of the Agreement. The Agreement was signed by a Market Manager on behalf of defendant. With respect to claims or controversies, the Agreement provides, *inter alia*,

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary, and affiliated entities, (4) the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, and agents, and/or (5) all successors and assigns of any of them.
>
> The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justifiable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability); claims for benefits (except claims

under an employee benefit or pension plan that either (1) specifies
that its claim procedure shall culminate in an arbitration procedure
different from this one, or (2) is underwritten by a commercial
insurer which decides claim); and claims for violation of any
federal, state or other governmental law, statute, regulation, or
ordinance, except claims excluded in the section of this Agreement
entitled "Claims Not Covered by the Agreement."
Except as otherwise provided in this Agreement, both the
Company and I agree that neither of us shall initiate or prosecute
any lawsuit or administrative action (other than an administrative
charge of discrimination to the Equal Employment Opportunity
Commission, or a similar fair employment practices agency, or an
administrative charge within the jurisdiction of the National Labor
Relations Board) in any way related to any claim covered by this
Agreement.

Plaintiff's action is based on alleged discrimination. Under the terms of the Agreement, defendant argues that plaintiff's claims are expressly covered and plaintiff must therefore submit these claims to arbitration under the provisions of the Federal Arbitration Act.

The Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 1, *et. seq.* (West 1970) provides in pertinent part:

A written provision in any maritime transaction or a contract
evidencing a transaction involving commerce to settle by
arbitration a controversy thereafter arising out of such contract or
transaction, . . . shall be valid, irrevocable, and enforceable, save
upon such grounds as exist at law or in equity for the revocation of
any contract.

The FAA establishes a "liberal federal policy favoring arbitration

agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). It applies both in federal courts and state courts, as Congress intended the FAA to pre-empt state anti-arbitration laws to the contrary. *Circuit City,* 532 U.S. 105, 122 (2001). Plaintiff argues that his action is exempt from the provisions of the FAA because he "was a transportation worker engaged in interstate commerce. . ." Plaintiff's reliance on this exemption, however, is misplaced. Section 1 of the FAA excludes from its provisions transportation workers within the transportation industry.

> While the FAA applies to employment contracts, § 1 of the FAA excludes from the Act's coverage "contracts of employment of seamen, railroad employees, or *any other class of workers engaged in foreign or interstate commerce.*" 9 U.S.C. § 1 (emphasis added). This exclusion provision "is limited to transportation workers, defined, [⋯], as those workers 'actually engaged in the movement of goods in interstate commerce.' " *Circuit City,* 532 U.S. at 112, 121 S.Ct. 1302 (quoting *Cole v. Burns Int'l Security Servs.,* 105 F.3d 1465, 1471 (D.C.Cir.1997)). This exclusion shows Congress's "concern with transportation workers and their necessary role in the free flow of goods⋯" *Circuit City,* 532 U.S. at 121, 121 S.Ct. 1302. The Court surmised that "[i]t would be rational for Congress to ensure that workers in general would be covered by the provisions of the FAA, while reserving for itself more specific legislation for those engaged in transportation." *Id.* "The emphasis [of the § 1 exclusion, therefore,] was on a class of workers in the transportation industry, rather than on workers who incidentally transported goods interstate as part of their job in an industry that would otherwise be unregulated." *Hill v. Rent-A-Center, Inc.,* 398 F.3d 1286, 1289 (11th Cir.2005).
> \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*
>
> Synthesizing analytical factors used by other courts, we will apply the

> following non-exclusive list of factors in determining whether an employee is so closely related to interstate commerce that he or she fits within the § 1 exemption of the FAA: first, whether the employee works in the transportation industry; second, whether the employee is directly responsible for transporting the goods in interstate commerce; third, whether the employee handles goods that travel interstate; fourth, whether the employee supervises employees who are themselves transportation workers, such as truck drivers; fifth, whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; sixth, whether the vehicle itself is vital to the commercial enterprise of the employer; seventh, whether a strike by the employee would disrupt interstate commerce; and eighth, the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties (i.e., a truck driver whose only job is to deliver goods cannot perform his job without a truck). *See Lorntzen v. Swift Transportation, Inc.,* 316 F.Supp.2d 1093, 1097 (D.Kan.2004); *Veliz v. Cintas Corp.,* No. C 03-1180 SBA, 2004 WL 2452851, at *6 (N.D.Cal. Apr.5, 2004).

*Lenz v. Yellow Transp., Inc*. 431 F.3d 348, 351-53 (8th Cir.2005).

Applying the factors above to the present facts, it is clear that plaintiff, does not work in the transportation industry. Defendant is in the rent-to-own industry. Any transportation of goods across state lines is merely incidental to defendant's business. See, *Hill v. Rent-A-Center* 398 F.3d at 1289.

Plaintiff next contends that the Agreement is unconscionable and therefore unenforceable. Plaintiff argues that the agreement lacks mutuality, consideration (it was executed three days after his employment commenced and was executed by a "Market Manager" rather than a "Store Manager") and provides for such restricted

discovery powers and allocation of fees so as to completely undercut plaintiff's ability to prosecute his claims of employment discrimination.

"[W]hen deciding whether an arbitration provision is unconscionable, courts apply ordinary state-law principles governing the formation of contracts." *Pro Tech Industries, Inc. v. URS Corp.,* 377 F.3d 868, 872 (8th Cir.2004). The parties do not dispute that Missouri law governs. Accordingly, the Court looks to Missouri law to determine whether the Agreement is unconscionable.

Under Missouri law, "there are procedural and substantive aspects of unconscionability, the former relating to the formalities of the making of the contract and the latter to the specific contract terms." *Bracey v. Monsanto Co.,* 823 S.W.2d 946, 950 (Mo. banc 1992). "[P]rocedural unconscionability in general is involved with the contract formation process, and focuses on high pressure exerted on the parties, fine print of the contract, misrepresentation, or unequal bargaining position." *Funding Sys. Leasing Corp. v. King Louie Int'l, Inc.,* 597 S.W.2d 624, 634 (Mo.App.1979). "By substantive unconscionability is meant an undue harshness in the contract terms themselves." *Id.* "Generally there must be both procedural and also substantive unconscionability before a contract or a clause can be voided." *Id.* Furthermore, "it has been suggested ⋯ that there be a balancing between the substantive and procedural aspects, and that if there exists gross procedural

unconscionability then not much be needed by way of substantive unconscionability, and that the same "sliding scale' be applied if there be great substantive unconscionability but little procedural unconscionability." *Id.*

The Agreement is neither procedurally nor substantively unconscionable. The parties mutually agreed to submit their claims to arbitration. Further, the consideration for the agreement is giving up the right to litigate claims by both parties; the consideration, is not, as plaintiff suggests the act of hiring by defendant and the acceptance of employment by plaintiff. Plaintiff acknowledges his signature on the agreement. His failure to read it does not relieve him of his obligations thereunder. *See Larry United Super, Inc. v. Werries*, 253 F.3d 1083, 1086 (8th Cir. 2003). Finally, plaintiff's argument that the agreement denies an employee any meaningful choice or access to the courts because it restricts the taking of depositions and requires the parties to share equally the filing fees and costs of the arbitrator's fee is without support and merit. The Agreement provides for the arbitrator to allow additional discovery if requested by either party. Further, plaintiff has presented no specific evidence of the likelihood of incurring prohibitive expenses, as is his burden in attempting to invalidate an arbitration agreement. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000); *Faber v. Menard, Inc.*, 367 F.3d 1048, 1053-54 (8th Cir. 2004). ("The Supreme Court has

not established what quantum of proof is necessary to meet that burden. *Id.* We require more than just a hypothetical inability to pay, however, to overcome the federal policy favoring arbitration. *See Dobbins,* 198 F.3d at 716-17. The party seeking to avoid arbitration should present specific evidence of likely arbitrators' fees and its financial ability to pay those fees so that the court can determine whether the arbitral forum is accessible to the party. If the party does not meet its burden, the district court must honor the arbitration agreement and compel arbitration.")

Finally, plaintiff argues that defendant has waived its right to compel arbitration by removing the action from Perry County, Missouri. Plaintiff provides no support for this argument. The Court agrees that defendant has not substantially invoked the judicial process to the detriment or prejudice of plaintiff. *Dupont v. Saskatchewan Govt. Ins.*, 258 F.3d 880, 886 (8th Cir. 2001). Defendant merely removed the action and filed an Answer in which it included its affirmative defense of the Arbitration Agreement. There has clearly been no substantial invocation of the judicial process such that plaintiff has been prejudiced.

## **Conclusion**

Although defendant seeks dismissal of this action, dismissal is not appropriate at this time. Under the provisions of the FAA, the Court must stay the proceedings

before it and compel arbitration if the dispute falls within the scope of a valid arbitration agreement. *Houlihan v. Offerman & Co.,* 31 F.3d 692, 694-95 (8th Cir.1994); *see also* 9 U.S.C. §§ 3 & 4.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's alternative Motion to Stay and to Compel Arbitration, [Doc. # 4], is granted.

**IT IS FURTHER ORDERED** that this matter is stayed pending arbitration.

**IT IS FURTHER ORDERED** that the parties shall submit to arbitration under the terms of the Arbitration Agreement as provided therein.

**IT IS FURTHER ORDERED** that defendant's request for costs and attorneys' fees incurred in connection with bringing this Motion is denied.

Dated this 18th day of January, 2006.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE